**HECTOR J. TAMAYO, ESQ./SBN:243621**
427 C Street, Suite 310
San Diego, CA 92101
Tel: (619)423-3222
Fax: (619)756-7538
tamayohj@tamayolaw.com

Attorney for Defendant
**ANGEL GARCIA-GONZALEZ**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> **ANGEL GARCIA-GONZALEZ,** <br><br> Defendant. | Case No. 19CR4809-AJB <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Date: July 19, 2021 <br> Time: 9:00 a.m. |

COMES NOW, defendant ANGEL GARCIA-GONZALEZ by and through his attorney Hector J. Tamayo, Esq., pursuant to Third Revised General Order 350, submits his Sentencing Memorandum.

I.

**SUMMARY SENTENCING RECOMMENDATION**

Mr. Garcia-Gonzalez respectfully recommends a sentence of 60 months in custody.

II.

**STATUTORY FACTORS UNDER 18 U.S.C. §3553**

Under 18 U.S.C. § 3582 (A), the Court is directed to consider certain factors to determine the appropriate punishment, "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." Id. (Emphasis added).

Under 18 U.S.C. § 3553(a) the Court is directed to "impose a sentence sufficient, but not greater than necessary to comply with purposes [of sentencing]."

Taken together §§ 3582(a) and 3553(a) reflect a clear Congressional preference for the least possible sentence, and for appropriate alternatives to incarceration.

**A.    The Nature and Circumstances of the Offense, and History And Characteristics of the Offender (§3553(a)(1))**

### 1. The Offense[1]

The offense conduct is accurately reflected in the PSR with the exception of the characterization of the text conversations in paragraphs 18-21. The discussion of kilos was actually referring to Mr. Garcia-Gonzalez' weight loss.

### 2. History and Characteristics of Mr. Garcia-Gonzalez[2]

Mr. Garcia-Gonzalez is a highly empathetic and reflective man. He often gets upset with himself and depressed for the situation he finds himself. He wants to put this chapter of his life behind him and go back to being with his aunt, friends and his dogs. He enjoys a strong support from friends and family.[3]

### 3. Personal and Family Data

As stated in the PSR, Mr. Garcia-Gonzalez was mistreated by his birth parents because of his sexual orientation. He was also beaten by his paternal uncle because of his sexual orientation.

### 4. Physical Condition

Mr. Garcia-Gonzalez' physical health data has been accurately reflected by the PSR.

//

//

---

[1] Offense Conduct reflected accurately reflected in PSR
[2] History and Characteristics accurately reflected in PSR.
[3] See Exhibit A- Letters of Support

**5. Mental and Emotional Health/Substance Abuse**

Mr. Garcia-Gonzalez' mental and emotional health data have been accurately reflected by the PSR.

**6. Education & Vocational Skills**

Mr. Garcia-Gonzalez' education and vocational skills data have been accurately reflected by the PSR.

**B.   The Statutory Purposes of Sentencing (§3553(a)(2))**

Section 3553(a)(2) states the appropriate sentence needs:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense:
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed education and vocational training, medical care, or other correctional treatment in the most effective manner. Id.

**C.   Advisory Sentencing Guidelines (§3553(a)(4) and (5))**

**1. Adjusted Offense Level**

The plea agreement contains the following application of the Guidelines in this case:

| | | |
|---|---|---|
| 1. | Base Offense Level USSG§ 2D1.1 | 38 |
| 2. | Importation of Methamphetamine (if defendant is not subject to an adjustment for role under § 3B1.2), USSG § 2d1.1(B)(5) | +2 |
| 3. | Safety Valve, if applicable USSG §§ 2D1.1(b)(18) & 5C1.2 | -2 |
| 4. | Acceptance of Responsibility, USSG § 3E1. | -3 |
| 5. | Expeditious Resolution, USSG § 5K2.0 | -2 |
| | **Total Offense Level** | 35 |

D.  **18 U.S.C. §3553 SENTENCING FACTORS**

Per the plea agreement, the parties agree that Mr. Garcia-Gonzalez may not recommend additional downward departures but may seek other sentence reductions under 18 U.S.C. §3553. The parties also agree that Mr. Garcia-Gonzalez may not seek a sentence less than 60-months. This case presents a combination of unusual factors that taken together warrant a variance under 18 U.S.C. §3553. Based on the following sentencing factors, Mr. Garcia-Gonzalez respectfully requests that the Court vary 6-levels under §3553.

   a. **Aberrant Conduct**

The Court could apply a variance for "aberrant Conduct". *See* U.S. v. Howe, 543 F.3d 128 (3rd Cir. 2008) (where defendant convicted of mail fraud with loss of $150,000 and guidelines 18-24 months, sentence of probation with 3 months home detention not unreasonable even though cover up lasted two years in part because crime was "isolated mistake...in the context of [the defendant's] entire life."); United States v. Jones, 158 F.3d 492 (10th Cir. 1998) (where defendant convicted of felon in possession, district court properly considered conduct "aberrant conduct" which along with 10 other factors warranted a downward departure). Here, Mr. Garcia-Gonzalez' did participate in the offense for roughly 1 year, however in the context of his entire law-abiding life it constitutes aberrant conduct. It should also be noted that he felt at the mercy of his business manager and romantic partner to be involved in the drug trafficking scheme because his manager/partner controlled his finances and his social media presence. This offense was also his first law enforcement contact. Because the offense was aberrant, Mr. Garcia- Gonzalez respectfully request the Court to vary based on this factor.

   b. **Needed Medical Care**

The Court could apply a variance based on Mr. Garcia-Gonzalez' medical care needs. As stated in the PSR at paragraphs 97-103 which references Mr. Garcia-Gonzalez' medical records, Mr. Garcia-Gonzalez' suffers from depression and has

various complications from a botched gastric bypass surgery. Complications from that surgery include but are not limited to constant nausea, stomach issues, a very limited diet consisting mainly of Ensure and having to have a weekly enema to empty his bowels. *See* U.S. v. Carmona-Rodriguez 2005 WL 840464, 4 (S.D.N.Y., 4/11/2005) (unpub.) (where 55 year old with no priors pled guilty to distributing drugs, court sentences below applicable guidelines in part because, *post Booker*, needed medical care is a factor that must be considered along with the guidelines. "It is also significant that the defendant is suffering from high blood pressure and diabetes and that she has received psychiatric treatment for anxiety and depression since 1994. *See Nellum*, 2005 WL 300073, at 4 (stating that § 3553(a)(2) and Booker " 'require judges to impose sentences that ... effectively provide the defendant with needed medical care." ') (quoting *Booker*, 125 S.Ct. at 765.)

Here, it is evident that Mr. Garcia-Gonzalez' has greater needs regarding his physical and mental condition and respectfully requests the Court vary based on this factor.

### c. First Conviction Justifies Downward Variance

Mr. Garcia-Gonzalez has never suffered from a conviction for a crime in this Court or any Court. A 60-month sentence would be adequate here, any sentence greater would be unreasonable and not take into consideration that he is now going to be a convicted felon which carries great consequences for the rest of his life, this is if first ever period of incarceration and the fact that he will be deported and never be able to come back to the United States again. Taking that in consideration the Court could justify a variance. (*See* U.S. v. Paul 561 F.3d 970 (9th Cir. 2009) (where defendant convicted of embezzlement and guidelines 10-16 months, court's within guideline sentence of 15 months unreasonably high in part because Paul was a first-time offender with no criminal record whatsoever); U.S. v. Autery 555 F.3d 864 (9th Cir. 2009) (where defendant

convicted of poss. of porn. And where guidelines 41-51 months, court's sua sponte variance to probation not unreasonable in part because defendant's first conviction and Crim. History Level I "did not fully account or his complete lack of criminal history" because defendant with minor criminal history still falls in Category I)

### d. Lack of Placement Options

Courts have found departure warranted based on the effect that a defendant's status as an alien in custody has on placement. In United States v. Charry-Cubillos, 91 F.3d 1342 (9th Cir. 1996), this Court remanded the matter back to the district court for further findings to determine whether departure was warranted on the basis of the effect that the defendant's status as an alien has on Bureau of Prison custody. See also U.S. v. Navarro-Diaz, 420 F.3d 581 (6th Cir. 2005) (illegal reentry case with guidelines 57-71 months, case remanded because of Booker where district court noted defendant would be punished more than citizen because not eligible for half way house at end of sentence); U.S. v. Davoudi, 172 F.3d 1130 (9th Cir. 1999) (where defendant convicted of making false states to bank, district court had discretion to depart downward because deportable alien may be unable to take advantage of minimum security designation of the up to six months of home confinement authorized by 18 U.S.C. §3624(c). Like the defendants in the above cases, Mr. Garcia-Gonzalez is precluded from early release to a halfway house based on his alienage. Because his alienage renders him ineligible for halfway house placement, he is precluded from receiving a split sentence. Mr. Garcia-Gonzalez respectfully request the Court to vary based on his lack of placement options.

### e. Collateral Consequences

There is a broad range of collateral consequences, under both federal and state law, that will attach upon Mr. Garcia-Gonzalez' conviction. Many consequences "serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences." United States v. Nesbeth, 15 CR0018-FB, opinion dated May 25, 2016, at page 2. As a consequence of this conviction, Mr. Garcia-Gonzalez will

always be a convicted felon with no ability to reduce his conviction to a lesser offense, his Non-Immigrant Border Crossing Card Visa will be terminated and he will be deported based on this offense.

### f. Unlikeliness of Recidivism

Mr. Garcia-Gonzalez is not a risk to re-offend. The likelihood that a defendant "will engage in future criminal conduct [is] a central factor that a district court must assess when imposing sentence." Pepper v. U.S., 131 S.Ct. 1229, 1242 (2011). Also, courts have found the unlikeliness of recidivism as a basis for departure. See e.g, U.S. v. Smith, 2008 WL 1816564 (4th Cir. 2008) (departure from 78-97 months to 24 months not abuse of discretion where defendant had lack of prior law enforcement contacts, and had "an absence of any risk that he will involve himself in similar conduct in the future"). The Sentencing Commission's report, "Recidivism and the First Offender" (May 2004) suggests that individuals - like Mr. Garcia-Gonzalez - with zero criminal history points are less likely to recidivate than all other offenders, even for offenders with only one criminal history point. Also, strong family and community support assists rehabilitation and lowers the risk of recidivism. "The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures." See e.g., United States v. Sayad, 589 F.3d 1110 (10th Cir. 2009) (variance from 57 months to probation is reasonable for defendant convicted of delivery of 11 kilograms of cocaine, in part because strong family support will aid rehabilitation). Mr. Garcia-Gonzalez' unlikeliness of recidivism is evident from his soon to be deported status, relatively young age, strong social support, lack of hard drug and alcohol abuse and lack of any prior law enforcement contacts.

//
//
//
//

### g. Increasing the Punishment Does Not Necessarily Deter Crime

In May of 2016 the National Institute of Justice published a summarization of studies titled "*Five Things About Deterrence*"[4]. It found amongst other things that increasing the length of a sentence does not deter crime. The summarization cited that research found evidence that prison can exacerbate, not reduce, recidivism. Prisons themselves may be schools for learning to commit crimes. The summarization quoted the 2009 research conclusions by Nagin, Cullen and Johnson in an article contained in *"Crime and Justice: A Review of Research"*[5] which stated the following:

> "… compared to non-custodial sanctions, incarceration has a null or mildly criminogenic impact on future criminal involvement. We caution that this assessment is not sufficiently firm to guide policy, with the exception that it calls into question wild claims that imprisonment has strong specific deterrent effects."

Nagin continued the research and concluded amongst other things that there is little evidence of a deterrent effect as a result of the experience of imprisonment and found that evidence existed suggesting that that reoffending is either unaffected or increased by increased sentencing.[6]

Although not law or policy, the inclusion of this research is meant as a respectful invitation to consider these conclusions in tailoring a sentence for Mr. Garcia-Gonzalez.

### h. Guideline Consideration

The sentencing court has substantial judicial independence to grant adjustments, departures and further "…the principle that 'the punishment should fit the offender and not merely the crime.'" Pepper v. United States, 131 S.Ct. 1229, 1240 (2011). Accordingly, Mr. Garcia-Gonzalez requests the Court apply a variance under §3553. All

---

[4] "Five Things About Deterrence" is available at https://ncjrs.gov/pdffiles1/nij/247350.pdf.
[5] Nagin, Daniel S., Francis T. Cullen and Cheryl Lero Johnson, "Imprisonment and Reoffending," Crime and Justice: A Review of Research, vol. 38, ed. Michael Tonry, Chicago: University of Chicago Press, 2009: 115-200.
[6] Daniel S. Nagin, "Deterrence in the Twenty-First Century," Crime and Justice 42 (2013): 199-263.

relevant factors have been discussed in detail through the preceding section of this memorandum and support a six-level variance under 3553(a).

## **CONCLUSION**

For the above-mentioned reasons, Defendant ANGEL GARICA-GONZALEZ by and through his counsel Hector J. Tamayo, respectfully request that the Court sentence him to no more than 60- months in custody. Sixty months in custody is sufficient but not greater that necessary to satisfy statutory sentencing purposes and is a punishment fitting the offender and not merely the crime.

Date: July 12, 2021           s/ **Hector J. Tamayo**
                                                 Attorney for Defendant Mr. Garcia-Gonzalez